## MEMORANDUM IN SUPPORT

**I.    FACTUAL AND PROCEDURAL BACKGROUND.**

On November 8, 2019, Representative Plaintiff Rachel Johnson ("Plaintiff") filed this Action, alleging that Defendant violated the FLSA and Ohio Minimum Fair Wage Standards Act by failing to pay Plaintiff and other similarly situated employees all of their overtime pay. Specifically, Plaintiff alleged that she and other purported similarly situated employees (the "Class") were not compensated for time spent donning and doffing sanitary clothing before and after their scheduled shift, causing them not to be paid all of the overtime compensation to which they were entitled. (*See* Declaration of Jeffrey J. Moyle, attached as Exhibit 3 ("Moyle Dec"), at ¶ 7).

Defendant denied Plaintiff's material allegations, and denied that it violated the law. Defendant has consistently denied, and continues to deny, any liability or wrongdoing to Plaintiff or the Class throughout this case. (*Id.* at ¶ 8).

After Defendant filed its Answer to Plaintiff's Complaint, the Parties engaged in informal discussions of whether settlement of this case would be feasible. In furtherance of those discussions, Defendant's counsel agreed to provide Plaintiff's counsel with time records and payroll data for a random sample of the Class so that each side could evaluate their respective positions and formulate settlement proposals based on the data. Plaintiff's Counsel engaged a consultant (a Ph.D-level economist) to evaluate the records and create a mathematical damages model for the class. (*Id.* at ¶ 9).

After receiving the damages model, Plaintiff's counsel a made settlement demand, to which Defendant responded. After exchanging several settlement proposals, the Parties were able to agree on terms of settlement, which are set forth in detail in the Class Action Settlement Agreement and Release, attached as Exhibit 1. (*Id.* at ¶ 10).

The gross settlement amount is $300,000, which will cover: (a) all individual payments to class members who do not opt out of the settlement; (b) a service award to Plaintiff for her services in bringing and prosecuting this Action; and (c) Plaintiffs' Counsel's attorney fees and expenses. (*Id.* at ¶ 11).

The settlement class consists of 206 current and former non-exempt hourly employees of Defendant who were required to don and doff sanitary clothing before and after their scheduled shift at any time from January 1, 2018 through February 28, 2021. (*Id.* at ¶ 12). Class Members who do not opt-out of the settlement will receive a monetary payment calculated as his or her pro rata share of the net Settlement Fund based on the number of workweeks worked by the Class Member during the period of January 1, 2018 through February 28, 2021 in comparison to the total number of workweeks worked by all Class Members during that time period. The minimum Settlement Award is $20.00. (*Id.* at ¶ 13).

The Settlement Agreement resolves the individual and collective claims made pursuant to the FLSA, and provides classwide relief and distribution of funds pursuant to Rule 23. Class Members who do not opt out of the Settlement will release all any and all claims against Defendant under the FLSA and any and all applicable state and local wage and overtime laws, regulations, and ordinances up to the Effective Date of the Settlement Agreement, which is thirty-one days (31) days after the Court's Final Order and Judgment Entry approving the Settlement. (*Id.* at ¶ 14).

Prior to coming to agreement on the terms of settlement, Plaintiff's Counsel spent a significant amount of time doing an expected value calculation, using decision tree software called TreeAge Pro©. In this calculation, the Plaintiff's Counsel analyzed each potential risk of loss (i.e., decertification, summary judgment, willfulness) and assigned a probability value to each potential risk. The decision tree software compounded each of these probability values and applied those

values to the damages model. This exercise allowed Plaintiff to fully appreciate the entire risk picture of this case. (*Id.* at ¶¶ 20-27). The total settlement amount exceeds the expected value. (*Id.* at ¶ 27). Consequently, Plaintiff's counsel strongly believes that the settlement is fair, reasonable, and in the best interests of the class. (*Id.* at ¶¶ 16-19).

**II.     THE COURT SHOULD PRELIMINARILY APPROVE THE FLSA SETTLEMENT**

Settlement of claims made pursuant to § 216(b) of the FLSA are subject to approval by the Court. As shown in the attached Declaration of Jeffrey Moyle, and as explained below, preliminary Court approval is warranted.

**A.     The Seven-Factor Standard Is Satisfied**

The court presiding over the settlement of an FLSA collective action may approve a proposed settlement if it "find[s] that the settlement is fair, reasonable, and adequate." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *5 (N.D. Ohio Mar. 26, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)). Courts in the Sixth Circuit apply seven factors to evaluate collective action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007). "While these factors are helpful in guiding the analysis, the 'fairness of each settlement turns in large part on the bona fides of the parties' legal dispute,' that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement." *Barnes*, 2019 U.S. Dist. LEXIS 65657 at *5. Application of these principles to this settlement demonstrates that preliminary approval is warranted.

3

1. **No Indicia of Fraud or Collusion Exists**

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018) (citation omitted). Here, the Agreement was achieved only after arms-length and good faith negotiations between the Parties, after each Party had the opportunity to evaluate Defendant's time and payroll data to determine the potential damages at issue if this case were to continue. (Moyle Dec., ¶¶ 9, 20). As such, there is no indicia of fraud or collusion, and this factor favors preliminary approval of the settlement.

2. **The Complexity, Expense and Likely Duration of Continued Litigation Favor Preliminary Approval**

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted). Moreover, the Parties disagree over the merits of Plaintiff's claims, including whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, and whether Plaintiff and the class would be entitled to liquidated damages if they were to prevail on the merits. (Moyle Dec. ¶ 17).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to the Settlement Class promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (*Id*. ¶ 18).

4

### 3. Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement. Prior to filing the Action, Plaintiff's Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant. (Moyle Dec. ¶ 15). Defendant similarly performed a significant amount of research and factual investigation of the claims raised by Plaintiff. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

In addition, Defendant produced timekeeping and payroll records in advance of mediation, and Plaintiff engaged an expert to review those records and create a damages model, which Plaintiff shared with Defendant. (*Id.* ¶ 20). Plaintiff's counsel also performed a detailed analysis of the risks and possible outcomes of this case, and created a mathematical expected value to guide their settlement analysis. (*Id.* at ¶¶ 23-26). Consequently, not only were the factual and legal issues thoroughly investigated, the potential damages in this case were investigated as well.

### 4. The Risks of Litigation Favor Preliminary Approval

Counsel for both sides believe in the merits of their clients' positions, while also recognizing that continued litigation will be uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that the Class would receive no compensation or, if they do receive compensation, it will be after protracted litigation, likely also involving appeals. By settling the case at this relatively early stage of the litigation, the Parties and Class Members bypass the inherent risks of litigation and achieve finality on this matter. (Moyle Dec. ¶¶ 17-18).

### 5. Class Counsel and the Class Representative Favor Preliminary Approval

Class Counsel is highly experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented their clients' best interests in reaching the Settlement. (Moyle Dec. ¶¶ 5-6, 16). Counsel support the Settlement as fair and reasonable, and in the best interest of the class as a whole, as described in the Declaration of Jeffrey Moyle. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018). Accordingly, this factor favors preliminary approval of the Settlement.

### 6. The Reaction of Absent Class Members

If the Court approves the settlement, Class Members will receive notice of the settlement and be given the option to object to the Settlement Agreement, or opt out of the settlement and retain their legal rights if they believe that the settlement is not in their best interests. Thus, Class Members are not necessarily bound by the Settlement Agreement if it is approved by the Court. As such, Class Members will be able to decide for themselves whether they want to participate in the Settlement.

### 7. The Public Interest

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Here, rather than face the risk and uncertainty of continued litigation, the Settlement confers immediate benefits

6

on the Settlement Class, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports preliminary approval of the Settlement.

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court must "ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2009 U.S. Dist. LEXIS 144222, at *22 (N.D. Ohio Aug. 10, 2009). Here, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable and adequate for Plaintiff and the Class.

#### 1. The Individual Payments Are Reasonable and Adequate

The settlement compensates Class Members for alleged unpaid overtime wages on a proportional basis based on the number of workweeks each Settlement Class member worked during the period of January 1, 2018 to February 28, 2021. (Moyle Dec. ¶ 13). As such, each Class Member has the opportunity to obtain compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendant within the period of time covered by the settlement.

#### 2. Plaintiff's Service Award Is Proper and Reasonable

The Settlement Agreement provides for a service award of $5,750 to Plaintiff, in addition to her individual payment. Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred

7

during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

Here, Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiff's counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Counsel's opinion, fairly and adequately compensates the class for alleged unpaid wages. As such, the time and efforts Plaintiff provided supports the requested service payments. (Moyle Dec. ¶ 28).

### 3. The Attorney Fees to Plaintiff's Counsel Are Proper and Reasonable

After the Court has confirmed that the terms of settlement are fair to the Settlement Class, it may review the Parties' agreement as to the provision of fees and costs to Plaintiff's Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

Here, Plaintiff is requesting that the Court preliminarily approve as reasonable attorneys' fees of $100,000.00, representing one-third of the settlement fund. "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms*, No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (N.D. Ohio July 27, 2018); *see also, Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS

8

78222, at *6 (N.D. Ohio May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'") (citation omitted).

Further, Plaintiff's counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Moyle Dec. ¶ 29). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019); *see also, Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Finally, Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *16 (N.D. Ohio Mar. 26, 2019). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

    **4. The Court Should Preliminarily Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred In This Case**

Plaintiff's counsel should also be reimbursed their out-of-pocket expenses and costs in the amount of $5,705.30. "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *20 (S.D. Ohio Nov. 25, 2019). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

In the prosecution of this case, Plaintiff's counsel incurred out-of-pocket costs of $5,283.75 for fees paid to Plaintiff's economist for evaluating Defendant's pay and time data and creating a damages model, $409.05 for the filing fee and related expenses, and the remaining $12.50 was spent on postage. (Moyle Dec. ¶ 30). Because these costs and expenses are reasonable and were incurred in the prosecution of Plaintiff's claims and in administration of the settlement, the Court should preliminarily award Plaintiff's counsel reimbursement of these costs and expenses from the settlement fund, and preliminarily approve payment from the fund for settlement administration costs.

**III. THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT**

The proposed Class Action Settlement of Class Members' Ohio state law claims is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

**A.     Preliminary Approval of the Settlement Under Rule 23(b) Is Warranted**

**1.     Certification of the Settlement Class Is Appropriate**

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). The proposed Class satisfies those requirements.

The proposed class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. The Class, consisting of 206 members, is "so numerous that joinder of all members is impracticable." There is a common issue of law and fact presented by the Class Members' claim under the OMFWSA, whether Defendant failed to pay Plaintiff and the Class Members for all hours worked in excess of 40 per workweek. Plaintiff is an adequate representative of the Class, in that she has common interests with other class members and she has vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626. The unpaid overtime issues presented predominate over any individual questions. Class-wide resolution of this controversy is superior to the alternative of litigating dozens of individual lawsuits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883 (S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

## 2. The Class Notice Satisfies Rule 23 and Due Process

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit

12

noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed notice to the Class Members satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the notice will be sent to the Class Members by first-class mail using the addresses shown in Defendant's records. Furthermore, the Settlement Agreement provides that any notice returned as undeliverable may be traced to obtain a new address and be re-mailed by First Class Mail to the updated address. Accordingly, the Class Notice satisfies Rule 23 and due process requirements.

### B. Approval of the Settlement Under Rule 23(e) Is Warranted

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

#### 1. The Seven-Factor Standard Is Satisfied

The Sixth Circuit uses the same seven factors to evaluate class action settlements as it does to evaluate FLSA collective action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As discussed in detail above, the seven-factor standard supports approval of the Settlement.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## IV. CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court enter the Proposed Order, attached to hereto as **Exhibit 4**:

1. Giving preliminary approval of the Parties' settlement of the collective claims brought pursuant to the Fair Labor Standards Act as reflected in the Settlement Agreement;

2. Giving preliminary approval of the Parties' settlement of the class action claims brought pursuant to Fed. R. Civ. P. 23(e), and approve the distribution of the Notice of Proposed Settlement of Class Action and Fairness Hearing;

3. Scheduling a Fairness Hearing to take place approximately 120 days after granting preliminary approval of the Parties' class action settlement;

4. Designating Jeffrey J. Moyle and Hans A. Nilges of Nilges Draher LLC as Class Counsel, and preliminarily approving their request for attorneys' fees and costs; and

5. Preliminarily approving the service payment for Plaintiff Rachel Johnson;

Respectfully Submitted,

| | |
|---|---|
| */s/ Jeffrey J. Moyle* | */s/ Michele L. Jakubs (with permission)* |
| Jeffrey J. Moyle (0084854) | Michele L. Jakubs (0071037) |
| NILGES DRAHER LLC | ZASHIN & RICH, CO., L.P.A. |
| 1360 E. 9th Street, Suite 808 | 950 Main Ave., 4th Floor |
| Cleveland, OH 44114 | Cleveland, OH 44113 |
| (330) 470-4428 – Telephone | T: 216/696-4441 |
| (330) 754-1430 – Facsimile | F: 216/696-1618 |
| jmoyle@ohlaborlaw.com | mlj@zrlaw.com |
| | |
| Hans A. Nilges (0076017) | *Counsel for Defendant* |
| NILGES DRAHER LLC | |
| 7266 Portage St., N.W., Suite D | |
| Massillon, Ohio 44646 | |
| (330) 470-4428 – Telephone | |
| (330) 754-1430 – Facsimile | |
| hans@ohlaborlaw.com | |

*Counsel for Plaintiff*